IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **MARY PUCKETT,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: CBD-15-0939 |
| | * | |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | ***** | |

### MEMORANDUM OPINION

Before this Court is Defendant's Motion for Partial Summary Judgment (ECF No. 36) (the "Motion"). The Court has reviewed the Motion, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court **GRANTS in part** and **DENIES in part** the Motion.

I.   **Factual Background**

Plaintiff Mary Puckett ("Plaintiff") alleges that on May 7, 2012, Dr. Henry Lin, staff surgeon at the National Naval Medical Center in Bethesda, Maryland, performed a laparoscopic Roux-En-Y gastric bypass ("RYGB procedure"), a procedure Plaintiff had not consented to. Pl.'s Compl. 2-4. However, on April 20, 2012, Plaintiff had signed a consent form to have a laparoscopic sleeve gastrectomy ("LSG procedure") performed on the scheduled surgery date. *Id*. at 3. As a result, Plaintiff alleges that Defendant's staff surgeon was negligent when he failed to use reasonable and ordinary care on May 7th and performed the wrong surgical procedure. *Id*. at 5. Plaintiff further alleges that as a direct and proximate result of Defendant's negligence, she suffers and will continue to suffer from permanent medical and lifestyle changes, including but

1

not limited to vitamin deficiency, malabsorption, inability to use certain medications, and dumping syndrome. *Id*.

Defendant has stipulated to the fact that it breached the standard of care when its health care provider performed the RYGB procedure. Mot. 1. The sole issue before the Court at this moment is the extent of Plaintiff's economic damages. *Id*. at 2. Specifically, Defendant has moved for summary judgment on Plaintiff's claim seeking the cost of certain vitamins, nutritional supplements, and medications. *Id*.

## II.     Standard of Review

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is deemed genuine only if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is deemed material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Supreme Court has explained that the burden of proof lies with the movant to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court reviewing a motion for summary judgment must view the evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.     Analysis

### A. Whether RYGB and LSG patients have the same nutritional deficiencies is a genuine dispute as to a material fact and summary judgment is denied as to this issue.

Defendant argues that Plaintiff does not have any admissible evidence establishing that she is entitled to economic damages as a result of the breach.  Mot. 11.  In this regard, Defendant argues that Plaintiff does not have any admissible evidence demonstrating a causal connection between having had the RYGB procedure (the breach in this case) and the need to take multivitamins, iron, calcium citrate, vitamin D, vitamin B complex, and protein shakes, because if Plaintiff would have had the LSG procedure, she would have taken the same lifelong minimal daily nutritional supplements.  *Id*.  Defendant also argues that Dr. Allen Blosser, a gastroenterologist, is not qualified to opine as to the nutritional recommendations for RYGB and LSG patients, and his opinion that Plaintiff should take nutritional supplements for the rest of her life as a result of the RYGB procedure, should be excluded as mere speculation.  *Id*. at 12.  In addition, Defendant contends that contrary to Dr. Blosser's opinion, the American Society for Metabolic and Bariatric Surgery's Clinical Practice Guidelines for Perioperative Nutritional, Metabolic, and Nonsurgical Support of the Bariatric Surgery Patient (the "Guidelines"), published March 2013, recommend that both RYGB and LSG patients receive the same lifelong nutritional supplements.  *Id*. at 12-13.  Defendant further claims that Plaintiff lacks admissible evidence establishing that she is required to take protein shakes as a result of the RYGB procedure, or that she would not be taking protein shakes if she had the LSG procedure.  *Id*. at 13.  Defendant argues that the American Society for Metabolic and Bariatric Surgery states that after weight-loss surgery, most patients will require 60-80 grams of protein daily, which can be obtained through meats, eggs, dairy products, beans, as well as protein shakes or bars.  *Id*.

In response, Plaintiff argues that her testimony and Dr. Blosser's deposition testimony, which are admissible evidence, establish that Plaintiff's daily regimen of nutritional supplements is more extensive and more expensive than it would have been if she had the LSG procedure done. Pl.'s Opp'n, ECF No. 37, 7-8. Plaintiff also contends that the Guidelines Defendant refers to are inadmissible hearsay under Fed. R. Civ. P. 56(c)(1)(B). *Id*. at 9. Even if the Guidelines were admissible, Plaintiff argues, they apply to recommendations for nutritional supplements in the "early postoperative care" period rather than to the "follow-up" period that lasts a lifetime. *Id*. Plaintiff further claims that Defendant seeks to exclude the cost of the daily protein shake by relying on hearsay statements from the Guidelines, as well as a hearsay website article. *Id*. at 9-10. Plaintiff claims that her deposition testimony, which the medical records corroborate, established that Defendant's nutritionist instructed her to start taking, for life, a daily protein shake as part of an "aggressive supplementation" strategy. *Id*. at 10. Plaintiff does concede that she would be taking multivitamin and vitamin D pills if she had the LSG procedure done. *Id*. As a result, excluding the cost of the multivitamin and vitamin D reduces the damages related to the nutritional supplements from $56,568.44 to $53,604.41. *Id*.

In its reply, Defendant responds to Plaintiff's position that the Guidelines are inadmissible hearsay by arguing that a party is entitled to introduce statements contained in a publication if it is relied upon by the expert, or alternatively, the statement may be admitted upon judicial notice under Fed. R. Evid. 803(18). Def.'s Reply, ECF No. 38, 3, n.2. Defendant further claims that Plaintiff has failed to demonstrate that Dr. Blosser is qualified to provide an opinion as to the standard of care and/or recommendations made to patients after the LSG procedure. *Id*. at 3.

The Court finds that for purposes of the present motion, Dr. Blosser is qualified to opine as to the nutritional recommendations for RYGB and LSG patients. The Court further finds that

Dr. Blosser's opinion that Plaintiff has to take additional nutritional supplements as a result of the RYGB procedure, is admissible.  Under Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  First, the Court "must determine whether the proffered expert testimony concerns scientific knowledge." *Zellers v. NexTech Northeast, LLC*, 533 Fed. Appx. 192, 196 (4th Cir. 2013).  Second, the Court "must determine whether that testimony will assist in the determination of a fact in issue." *Id*. (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 (1993)).  "In other words, '[t]he first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable,' and '[t]he second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue.'" *Id*. (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 527, 260 (4th Cir. 1999)).

Dr. Blosser is a gastroenterologist and a clinical assistant professor of medicine at Georgetown University.  *See* Allen Blosser's Depo., ECF No. 36-3, 7-8.  Dr. Blosser works at the Inova Fair Oaks Gastrointestinal (GI) division, which has "one of the largest [and most successful] bariatric surgery programs in the country."  *Id*. at 9:11-14.  Dr. Blosser does the pre-surgery evaluations and endoscopies for patients who are scheduled to have bariatric surgeries such as the RYGB and LSG procedures.  *Id*. at 11:6-10.  He also treats post-surgery complications as a result of bariatric surgeries.  *Id*.  Dr. Blosser sees approximately 100 patients a year for pre-surgery evaluations, and about 25-50 patients for post-surgery follow-ups.  *Id*. at 13:4-12.  For these 25-50 patients he sees for post-surgery follow-ups, approximately 50% have had the LSG procedure and 50% have had the RYGB procedure.  *Id*. at 48:13-20.  The Court

finds that Dr. Blosser has the requisite qualifications to offer expert testimony in the field of gastroenterology.

In this case, Dr. Blosser met with Plaintiff and interviewed her in his office in March 2015. *Id*. at 33:5-9. He also reviewed Plaintiff's medical records after their meeting. *Id*. at 33:17-21. In his deposition, Dr. Blosser opined that the nutritional deficiencies associated with the LSG procedure should be "minimal." *Id*. at 42:9-11. In contrast, the RYGB procedure "severely interferes with [the] absorption of nutrients," such as iron, according to Dr. Blosser. *Id*. at 42:19-22. Dr. Blosser explained that this occurs because the RYGB procedure entails the rearrangement of the anatomy of the gastrointestinal tract, while the LSG procedure just reduces the stomach without rearranging the anatomy. *Id*. at 41:4-22, 43:1-8, 47:17-48:1. Dr. Blosser testified that for patients who have had the RYGB procedure, he places them on iron supplements, some form of protein supplement if the patients cannot intake it through traditional sources, and some kind of B complex due to the malabsorption of vitamin B. *Id*. at 56:9-22. Dr. Blosser specifically noted that "everyone that has a [RYGB] should become iron deficient at some point" after the surgery. *Id*. at 62:5-7. He also indicated that he recommends female patients who have had the RYGB procedure to take calcium supplements. *Id*. at 65:5-11.

In contrast, for the patients who had the LSG procedure, no nutritional supplements would be recommended assuming that the patient was normal (did not have nutritional deficiencies prior to the surgery) and was able to maintain a normal diet. *Id*. at 57:3-10; 59:11-18; 95:1-12. Dr. Blosser also would not recommend a patient who has had the LSG procedure to take a calcium citrate supplement unless the patient had a history of calcium malabsorption prior to the surgery. *Id*. at 66:3-9; 109:13-18. In addition, according to Dr. Blosser, there is no reason for a patient who had the LSG procedure, to become iron deficient absent significant blood loss or a pre-surgery iron deficiency. *Id*. at 98:10-16; 108:18-22. Ultimately, it is Dr. Blosser's

opinion, as expressed in his report, that Plaintiff has to take iron supplements, calcium nitrate, Vitamin B complex and protein shakes for the rest of her life. *See* Dr. Blosser's Report, ECF No. 36-2, at 4.

Assuming that during his deposition Dr. Blosser relied on the Guidelines published in 2013, and assuming the Court can consider the Guidelines under Fed. R. Evid. 803(18)(B), this does not support granting summary judgment in Defendant's favor. As Defendant highlights, recommendation 32 in the Guidelines recommends the same daily nutritional supplements (e.g., calcium, iron, and protein) for RYGB and LSG patients. *See* ECF No. 36-5, at 166. Since Dr. Blosser's deposition testimony and report comes to a different conclusion from the Guidelines, there is a dispute as to a factual issue, and summary judgment cannot be granted in the Defendant's favor.

    **B. There is insufficient evidence to demonstrate a causal connection between the GERD medications and Defendant's breach.**

Next, Defendant argues that Dr. Blosser's opinion, indicating that Plaintiff will likely need to take gastroesophageal reflux disease ("GERD") medications for the rest of her life, is not based on sufficient facts or data and cannot be relied on. Mot. 14. Specifically, Defendant argues that first, Dr. Blosser is assuming that Plaintiff actually has GERD even though he also testified that Plaintiff has not been diagnosed with this disease. *Id*. Second, according to Defendant, Dr. Blosser could not say in his deposition whether it was more likely, less likely, or the same that Plaintiff would have GERD symptoms if she had the LSG procedure. *Id*. Finally, Defendant argues that even if there was a causal connection between GERD and the RYGB procedure, Dr. Blosser testified that he did not know what the treatment options would be. *Id*. Plaintiff responds that in his report, deposition and declaration, Dr. Blosser stated that the GERD symptoms Plaintiff is experiencing are likely due to the anatomical changes as a result of the RYGB procedure, and will need lifelong medications beginning in 2017. Pl.'s Opp'n 13.

The Court finds that there is insufficient evidence to demonstrate a causal connection between Plaintiff's alleged GERD symptoms and Defendant's breach. As a result, the Court grants summary judgment in favor of Defendant as to this issue. Plaintiff points to the fact that in his sworn testimony during his deposition on May 11, 2016, and in his statements under penalties of perjury as part of his declaration on June 23, 2016, Dr. Blosser stated that Plaintiff suffered from GERD. In contrast to Plaintiff's position, the Court finds that Dr. Blosser's declaration contradicts his prior sworn testimony, and as result, the Court ignores Dr. Blosser's declaration. Although issues of credibility are generally left for determination at trial, the Court can disregard testimony in which the non-moving party contradicts their previous, sworn testimony to prevent summary judgment. *See, e.g., Rohrbough v. Wyeth Lab., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (citing *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984)). "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Id.*

Dr. Blosser is clear in his deposition, taken on May 11, 2016, that although Plaintiff has reflux which is suggestive of GERD, the only way to know whether Plaintiff has GERD is by doing an endoscopy and taking a biopsy. *See* Allen Blosser's Depo., ECF No. 36-3, at 111:20-112:11; 113:7-13. Dr. Blosser further testified during his deposition that although a barium swallow test can be suggestive of GERD, there are many false positives due to the nature of the procedure. *Id.* at 112:12-22. In addition, Dr. Blosser testified that he is unaware of any data suggesting that a patient who had the RYGB procedure should develop GERD, unless they are noncompliant with the recommended diet or medical regime. *Id.* at 117:8-14. Dr. Blosser also

could not express an opinion as to whether it would be more likely, less likely, or the same that Plaintiff would have the GERD symptoms if she had the LSG procedure. *Id*. at 119:6-13. In terms of the appropriate treatment for Plaintiff related to the alleged GERD symptoms, Dr. Blosser testified that he does not know what is best for Plaintiff without having done an endoscopy. *Id*. at 121:3-22; 122:7-9.

On June 23, 2016, after his deposition, Dr. Blosser signed a declaration, which was included as part of Plaintiff's opposition to the Motion, where he asserts that "the wrongful RYGB surgery caused [Plaintiff] to begin suffering symptoms that are consistent with GERD." *See* ECF No. 37, Exhibit D, at 2. Dr. Blosser also stated that Plaintiff was going to suffer these symptoms for the rest of her life, and that beginning in 2017, she would likely need to take daily medication regardless of whether she was formally diagnosed with GERD. *Id*. Similar to *Rohrbough*, where the court upheld the district court's decision to disregard a doctor's affidavit which contradicted his prior sworn deposition, in this case, the Court excludes Dr. Blosser's declaration and determines that there is no genuine issue of material fact as to Plaintiff's GERD symptoms and grants summary judgment in favor the Defendant as to this issue. The Court also finds that Plaintiff's deposition testimony that she suffers from GERD, and Dr. Blosser's November 10, 2015 report, *see* ECF No. 36-2, constitute insufficient evidence to create a genuine issue of material fact as to her alleged GERD symptoms.

### C. There is insufficient evidence to conclude that Defendant's negligence is causing Plaintiff to suffer from dumping syndrome.

Finally, Defendant argues that Dr. Blosser's opinion that Plaintiff is likely going to suffer from dumping syndrome for the rest of her life is based upon unknown facts, such as whether Plaintiff is able to control the symptoms through diet, if there is an identifiable cause, or if she has bacterial overgrowth. Mot. 15. Therefore, Defendant argues, it is speculative whether Plaintiff will need medication for the rest of her life to treat the syndrome. *Id*. Plaintiff argues

that she suffers episodes of dumping syndrome, an illness that is unique to RYGB patients.  Dr. Blosser's report and deposition testimony also indicate that Plaintiff will have to take medication for the rest of her life.  Plaintiff contends this is admissible evidence and that the cost of these medications are damages caused by the RYGB procedure.  Pl.'s Opp'n 11-12.

The Court finds that there is insufficient evidence to establish that Plaintiff is suffering from dumping syndrome due to Defendant's negligence.  As a result, the Court grants the motion as to this issue.  In her deposition, Plaintiff stated that approximately a year after she underwent the RYGB procedure, she started experiencing the symptoms associated with dumping syndrome.  *See* Mary Puckett Depo., ECF No. 36-1, at 63:1-5.  Plaintiff also testified that she now experiences these symptoms "twice a month, maybe." *Id.* at 61:21-62:1.  While it might be plausible that the RYGB procedure caused Plaintiff to have dumping syndrome, Dr. Blosser's deposition testimony hints at the fact that patients who had the LSG procedure could also have similar symptoms.  In his deposition, Dr. Blosser responded in the affirmative when he was asked whether he was aware of people who had the LSG procedure and had symptoms that resemble dumping syndrome.  *See* Allen Blosser's Depo., ECF No. 36-3, at 128:12-15.  Based on this evidence, the Court finds that there is insufficient evidence to establish a causal connection between Defendant's negligence and the dumping syndrome Plaintiff is experiencing.

Since the Court decided that there is insufficient evidence to establish a causal connection between the RYGB procedure and Plaintiff's dumping syndrome, the Court does not need to address whether Plaintiff will need medication for the remainder of her life to treat this disease.[1]

---

[1] The Court does note however, that there appears to be some inconsistencies as to whether Plaintiff will need medications to treat the dumping syndrome or whether a change in her diet would be enough.  First, in his report dated November 7, 2015, Dr. Blosser states that "despite dietary changes," Plaintiff will likely need three kinds of medications by 2022 to treat the dumping syndrome she will have for the remainder of her life.  *See* ECF No. 36-2, at 2.  Then, during Plaintiff's deposition taken on February 9, 2016, she stated that although she has not discussed the symptoms at length with any doctor, she knows that as long as she avoids certain foods, she could avoid the symptoms.  *See* ECF No. 36-1, at 67:12-21.  Subsequently, in Dr. Blosser's deposition taken on May 11, 2016, he answered in the affirmative when asked if Plaintiff would only need to take medications in case she could not control the syndrome through diet.  *See* Dr. Blosser's Depo., at 133:13-16.  Finally, in his declaration signed on

**IV.     Conclusion**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the Motion. The Motion is granted as to the GERD and dumping syndrome issues and denied as to the issues regarding Plaintiff's nutritional deficiencies.


September 2, 2016                                                              /s/
                                                                  Charles B. Day
                                                                  United States Magistrate Judge

CBD/yv

---

June 23, 2016, Dr. Blosser again re-states that Plaintiff suffers from episodes of dumping syndrome "despite her attempts to avoid them with dietary changes" and that by 2022, she will need medication.  *See* Pl.'s Opp'n, Exhibit D, 2.  Since the Court does not have to decide the issue of treatment for Plaintiff's dumping syndrome, it will not comment further on these inconsistencies.